## BARNHILL et ux. v. RUBIN et al.
### Civ. No. 142.

District Court, N. D. Texas, Amarillo Division.

Aug. 18, 1942.

Umphres & Umphres, of Amarillo, Tex., for plaintiffs.

E. H. Foster and Warren M. Sparks, both of Amarillo, Tex., Don Emery and, Rayburn L. Foster, both of Bartlettsville, Okl., for Phillips Petroleum Co.

Clayton & Bralley, of Amarillo, Tex., for Dave Rubin.

Riley Strickland, of Amarillo, Tex., amicus curiæ.

DAVIDSON, District Judge.

The complaint in this case involves the construction of a casinghead gas contract and seeks an accounting between the parties.

Complainants, J. R. Barnhill and wife, Cathryn A. Barnhill, of Potter County, executed an oil and gas lease covering certain land in Hutchinson County, Texas, the grantee in such lease, Dave Rubin, also of Potter County, Texas, and who is now a party to this proceeding, entered into a casinghead gas contract with the defendant, Phillips Petroleum Company, the construction of the provisions of this contract must be had to determine that there exists any necessity for ordering an accounting.

The pertinent portions of such contract reading as follows:

"Casinghead Gas Contract

"This agreement, Made and entered into this 9th day of December, 1936 by and be-

tween Dave Rubin hereinafter referred to as the 'Seller' and Phillips Petroleum Company hereinafter referred to as the 'Buyer'.

"Witnesseth: Whereas, Seller owns and holds a certain valid and subsisting oil and gas mining lease covering the following described lands situate and being within the County of Hutchinson, State of Texas to-wit: * * *

"Whereas, Seller is operating the above described properties and certain wells on said lands are productive or may be productive of casinghead gas, and the Seller desires to sell the casinghead gas which may hereafter be produced from wells located on said premises. The term 'casinghead gas' means all natural gas from which gasoline can be extracted or manufactured and whose residue remaining after gasoline extraction or manufacture is lawfully disposed of.

"Now, therefore, in consideration of the sum of One ($1.00) Dollar paid by the Buyer to the Seller, receipt of which is hereby acknowledged, and other payments and covenants hereinafter specified, the Seller hereby grants, bargains, sells and agrees to deliver to the Buyer and the Buyer agrees to purchase and take from the Seller, subject to the stipulations and conditions hereinafter specified, all the casinghead gas now or hereafter produced from the wells on the lands hereinabove described.

"1. Purpose—The gas hereby sold is conveyed to the Buyer for the purpose of manufacturing therefrom gasoline or such other product or products as may be manufactured at Buyer's plant.

"2. Delivery Place—At the casingheads of the wells. Buyer may, with Seller's consent, install equipment acceptable to Seller on Seller's storage tanks for the purpose of saving and utilizing vapors therefrom, which for the purpose of this contract shall be considered casinghead gas.

"5. Residue Gas—The Buyer shall return to the nearest boundary line of the Seller's lease, above described, sufficient residue gas for the development and operation of said lease, not to exceed that remaining from the quantity of casinghead gas delivered to the Buyer from said lease after the extraction of gasoline therefrom, less the proportionate part of said residue gas necessary for gasoline plant.

"It is agreed and understood by and between the parties hereto, that if and when the residue gas remaining after the extraction of gasoline from such casinghead gas shall be more than sufficient for the needs of Buyer in the operation of said gasoline plant and more than sufficient for the needs and requirements of Seller for the development and operating purposes upon the premises from which the said casinghead gas is produced, then, and in that event, the Buyer shall have the right without the obligation to sell any or all surplus residue gas so remaining; provided that in the event of sale by the Buyer of any or all of such residue gas, Buyer shall pay to the Seller herein fifty per cent of the net proceeds received from the sale of such gas, such payments to be made at the same time as other payments hereunder. Net proceeds as herein used is defined as the gross proceeds less any cost of boosting and/or transportation necessary to market such gas.

"8. Settlement Tests—The gasoline content shall be determined by a field compression test or charcoal test, at Seller's option made in accordance with the official code of the Natural Gasoline Association of America for testing natural gas for gasoline content. The tests for gasoline content, air content and specific gravity of the gas shall be made by the Buyer quarterly.

"10. Price—The Buyer shall pay to Seller for the casinghead gas delivered hereunder a price per thousand cubic feet to be computed on the following basis:

"1. When gasoline content is less than .75 gallons per thousand cubic feet:

"(a) When average price is 2¢ per gallon, or less, 5% of the value of the gasoline.

"(b) When average price is more than 2¢ but less than 4¢ per gallon, 10% of value of the gasoline.

"(c) When average price is 4¢, but less than 6¢ per gallon, 15% of the value of the gasoline.

"(d) When the average price is 6¢ per gallon, or more, 20% of the value of the gasoline.

"2. When gasoline content is .75 gallons per thousand cubic feet, but less than 1.75 gallons per thousand cubic feet. * * *"

A division order was subsequently signed by the complainants, Barnhill and wife, by

which they became bound by the provisions of the casinghead gas contract, and which supersedes, to a degree, the original provisions of payment provided for in the lease.

A recast and dissection of this casinghead gas contract discloses a provision for compensation and settlement of the gas to be extracted under the original lease of different elements and by two separate processes.

It is provided that the buyer, the Phillips Petroleum Company, will pay to the seller, Rubin (which includes Barnhill and wife under the amended contract), for the casinghead gas delivered a price per thousand cubic feet to be computed upon a basis involving first, the richness of the gas in gasoline, and, second, the price of gasoline. A graduated or sliding scale being set out by which such payments may be made each month upon the calculation provided for in such schedule. This settlement is in payment of the liquid gasoline content extracted from the gas.

Provision is made then for the disposition of the residue gas that has not been reduced to liquid form and paid for as such. This remaining vapor is referred to and designated as residue gas and a provision is made in the contract just how compensation for this shall be made.

The contract allows the seller, Rubin, to use such gas after the gasoline is extracted in drilling wells and developing his lease. It allows the defendant, Phillips Petroleum Company, to use certain gas in the operation of its plants, and invokes the use of a curve, which in certain respects is the equivalent of a tabulated process of measuring the gas used by the respective parties for these purposes. Then whatever gas is left may be, by the defendant, disposed of for commercial purposes for making carbon black or upon the markets. "The Buyer shall have the right * * * to sell any or all surplus residue gas so remaining, provided that in the event of sale by the Buyer of any or all of said residue gas, the Buyer shall pay to the Seller herein fifty per cent of the net proceeds derived from the sale of such gas, such payment to be made at the same time as other payments hereunder. Net proceeds as herein used is defined as the gross proceeds less any cost of boosting and/or transportation necessary to market such gas."

From these two provisions of the contract it becomes apparent that two separate and distinct mathematical calculations are necessary in determining the size of the monthly check made to the complainants, Barnhill and wife, and to the lease holder, Dave Rubin.

The complainant, Barnhill, and the defendant, Dave Rubin, by their pleading and respective contentions in the case concur in insisting that the Phillips Petroleum Company is not following its contract in correctly calculating the proper monthly compensation under such agreement, and the evidence tends to support their contention in this particular.

It will be seen that the liquid content of the casinghead gas is determined by a certain field test and upon this test the size of the check is determined as to this element of the compensation to be made. This field test, according to the weight of the evidence, discloses the presence of about three gallons of liquid gasoline to each 1,000 feet of casinghead gas as taken from the well.

Now instead of taking the residue of the gas and figuring the entire balance according to the second process, the defendant, Phillips, extracts additional quantities in the interim while in the process of transition, that is, after it has measured the quantity of the gasoline at the field charcoal test for settlement purposes it conveys the gas to its plant through a pipeline and there applying certain processes, it takes out approximately three times as much liquid as the field test contemplates, and then figures the residue gas for the second settlement out of the balance. To state it in simple language, settlement is made upon the field test showing, for the purpose of this illustration, three gallons of gas. Before settlement is made for the "residue", we will say twelve gallons of gasoline liquids are extracted leaving a number of gallons of liquids extracted for which no accounting is had, or settlement made.

One opinion cited illustrates what was done by a lease upon a lake. Ice that was cut and moved from the lake was paid for upon one schedule and all water taken from the lake would be paid for upon another schedule at so much per barrel. A more apt illustration of what takes place is set forth in the illustration of the brief of Cade and Strickland, as amicus curiae by which the casinghead gas embraced in the contract is likened unto a milk contract by a dairyman. Dairyman "A" agrees to

sell his milk and cream to buyer "B". As a basis for measurement it is contracted that the cream shall be allowed to set over night, or a period of hours, at which time the cream that has risen to the top will be removed and sold at a given price and then the remainder will be sold as milk at a given price. The buyer "B" instead of settling on the basis of skimmed cream, eliminated by the natural process, installed in his plant a modern cream separator, by which is extracted a great deal more cream than was contemplated in the contract where it would be allowed to rise and be skimmed off by original and elementary processes. The difference in the amount of cream that could have been obtained by skimming and the amount that was actually obtained by the modern creamery represents that element which the complainant insists is involved in this suit and for which they are entitled to an accounting.

A wealth of authorities bearing directly or indirectly upon the interpretation of this contract has been cited by the several parties as well as counsel appearing as amicus curiae, who are interested in the same question in other suits pending in this court.

A great many of these authorities, while interesting, are not so very helpful in the present case. A number of them turn, for instance, upon the correct definition of gasoline or upon the definition of the word, casinghead gas, and just what is meant by the use of these terms. In the present contract, the instrument itself undertakes to define these elements and the authorities cited are not in point.

One case most nearly in point, cited by the defendant, is Hopkins v. Texas Company, 62 F.2d 691, decided by the Tenth Circuit. This case bears a striking resemblance to the one before us and a casual examination of it would seem decisive of the question, but we find an important distinction between it and the present case. That distinction lies in the provisions of the present contract which provides for a separate and distinct settlement for the residue gas. The contract in the Hopkins case not containing these provisions.

My view of the record, which has been well made and thoroughly developed, is that the residue gas has on one hand been materially reduced below that contemplated in the original contract by the extraction of a larger quantity of liquids, and that a large per cent of these liquids have not been paid for under that provision of the contract which authorized its plan of compensation and payment.

Just how much in dollars and cents this difference would amount to is a matter that should be ascertained and for which the complainant and defendant, Dave Rubin, should be compensated by the defendant.

The defendant insists and urges a plea of estoppel in the nature of an accord and satisfaction, claiming that the checks that have heretofore been issued by it and accepted by complainants under their leasehold agreement constituted a complete settlement up to the date and period of making such payment. In view of the fact that the defendant possessed all of the machinery and all of the knowledge and all of the facts by which the amount of these checks were to be ascertained, I do not think the act of the complainant in accepting them constitutes any final settlement or accord and satisfaction. Before one can waive a right or estop himself, he must do it knowingly and be possessed of the facts, and when the opposite party only has such facts and does not reveal them to him, he is not estopped nor does limitation run against him in asserting his right to a corrected statement embracing the true facts whereupon a settlement should be made. 1 C.J.S. Accounting, §§ 18 and 19, pp. 650, 655 and 656; Adams v. Sims, Tex. Civ.App., 214 S.W. 838, 839.

In allowing an accounting in the Sims case, Judge Hodges tersely states: "This is a suit by Sims to recover from Adams the difference between what Adams had agreed to account for and should have accounted for, and what he did account for."

It is the opinion of the court that an accounting should be ordered and that a competent person as an accountant with capacity to take testimony, clothed with the authority of a master of this court, conduct a hearing and determine what amount of money is due to the complainants, Barnhill and wife, and the defendant, Dave Rubin. The same to be calculated upon the value of that element of material taken from the gas for which no compensation has been made, as herein indicated in this opinion.